## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER<br>1718 Connecticut Ave., N.W.<br>Suite 200<br>Washington, DC 20009<br><br>      Plaintiff,<br><br>      v.<br><br>THE FEDERAL TRADE COMMISSION<br>600 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20580<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No._____<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR INJUNCTIVE RELIEF

1.  This is an action under the Freedom of Information Act ("FOIA"),

5 U.S.C. § 552 (2010), for injunctive and other appropriate relief, seeking the release of agency

records requested by the Electronic Privacy Information Center from the United States Federal

Trade Commission (FTC).

### Jurisdiction and Venue

2.  This Court has subject matter jurisdiction over this action and personal jurisdiction

over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) (2010) and 5 U.S.C. § 552(a)(6)(C)(i) (2010).

This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (2010).  Venue is

proper in this district under 5 U.S.C. § 552(a)(4)(B) (2010).

## Parties

3.     Plaintiff Electronic Privacy Information Center ("EPIC") is a public interest research organization incorporated as a not-for-profit corporation in Washington, D.C.  EPIC's activities include the review of federal activities and policies to determine their possible impacts on civil liberties and privacy interests.  Among its other activities, EPIC publishes books, reports, and a bi-weekly electronic newsletter.  EPIC also maintains a heavily visited Internet site, http://www.epic.org, which contains extensive information regarding privacy issues, including information EPIC has obtained from federal agencies under the FOIA. EPIC routinely and systematically disseminates information to the public.  This Court recognized EPIC's role as a representative of the news media in *EPIC v. Dep't of Defense,* 241 F. Supp. 2d. 5 (D.D.C. 2003).

4.     Defendant United States Federal Trade Commission ("FTC" or "Commission") is an independent commission established in the Executive Branch of the United States Government. The FTC is an agency within the meaning of 5 U.S.C. § 552(f)(1) (2010).

## Facts

### Google Secretly Collected Wi-Fi Data Using its Street View Cars

5.     Google began its Street View project in May 2007.

6.     Google represented that the project entailed collecting "street level imagery of various cities in the U.S . . . in order to provide users with a rich, immersive browsing experience directly in Google Maps, enabling greater understanding of a specific location or area."

7.     Google Street View began in several big U.S. cities, but expanded over the next three years into countries around the world.

8.     For the first three years, the debate surrounding the project focused almost exclusively on the collection and display of images obtained the Google Street View digital cameras.

9.     In April 2010, the German Data Protection Commissioner announced that Google Street View cars had been secretly collecting Wi-Fi data from unsecured wireless networks.

10.     In April 2010, Google announced that it had been collecting MAC addresses (the unique device ID for Wi-Fi hotspots) and SSIDs (the user assigned network ID name), but denied collecting any payload data (information sent over the network).

11.     In May 2010, Google admitted that its Street View cars had been collecting fragments of payload data.

12.     In October 2010, a Canadian report revealed that Google had collected entire e-mails, URLs, and passwords.

13.     In October 2010, Google conceded that it had collected entire e-mails, URLs, and passwords.

14.     Google has since indefinitely suspended Wi-Fi data collection in its Street View cars.

### The FTC Ended Its "Inquiry" Into Google Street View

15.     On May 19 2010, Congressmen Markey (D-MA) and Barton (R-TX) sent a letter to FTC Chairman Jon Leibowitz concerning Google's secretive collection of Wi-Fi data in connection with Google Street View.

16.     In this letter, the Representatives asked the FTC whether Google's actions "form the basis of an unfair or deceptive act or practice that constitutes harm to consumers" and whether Google's actions are "illegal under federal law."

17.    No FTC response to this letter can be found on the Congressmen's websites.

18.    In his Senate testimony on July 27, 2010, Chairman Leibowitz highlighted some of the issues with Google Street View that concerned the FTC.

19.    On October 27, 2010, the FTC announced that it had ended its "inquiry" into Google Street View's Wi-Fi data collection.

20.    In a letter to Google's law firm, David Vladeck, director of the Bureau of Consumer Protection at the FTC, explained that while he had "concerns" about Google's "internal review process," the Commission was satisfied by steps Google had taken and "assurances" Google had made to the Commission.

### Other U.S. Investigations of Google Street View Are Ongoing

21.    On May 21, 2010, EPIC wrote to Federal Communications Commission ("FCC") Chairman Julius Genachowski, asking the Commission to launch an investigation into Google's conduct.

22.    In particular, EPIC asked the FCC to determine whether Google's collection of Wi-Fi communications may have violated the Wiretap Act or the Communications Act.

23.    On June 11, 2010, the FCC's Chief of Consumer and Governmental Affairs published a blog post reminding consumers how to protect their Wi-Fi networks and stating that "collecting information sent over Wi-Fi networks clearly infringes on consumer privacy."

24.    On November 10, 2010, the Wall Street Journal reported that the FCC had opened an investigation into Google's secretive interception and collection of Wi-Fi data.

25.    In July 2010, then-Connecticut Attorney General Blumenthal's office announced that 38 states were participating in a multi-state investigation into Google's collection of Wi-Fi data.

26.    Blumenthal sent a letter to Google on behalf of the coalition, asking whether Google

4

intended to collect random bits of information over Wi-Fi or download specific types of data, as well as whether it has sold or otherwise used the technical network information it collected.

27. On December 10, 2010, Blumenthal issued a "civil investigative demand," for access to the data Google's Street View cars collected from homes and businesses in Connecticut. "Google's story changed," Blumenthal said, "first claiming only fragments were collected, then acknowledging entire emails."

## Other Countries Have Conducted Investigations into Google's Wi-Fi Data Collection and Penalized Google

28. In October 2010, the Canadian Privacy Commissioner determined that Google had violated Canadian privacy law when the company's Street View cars collected user information from wireless networks. The Commissioner called on Google to strengthen its controls and designate an individual to be responsible for privacy issues.

29. In November 2010, British officials announced that Google violated United Kingdom data protection laws when the company's Street View cars collected Wi-Fi data from private wireless networks. In lieu of a fine, Google UK will undergo an audit and must sign a commitment to ensure that data protection breaches do not happen again. The UK Information Commissioner stated that "the collection of this information was not fair or lawful and constitutes a significant breach of the first principle of the Data Protection Act."

30. In December 2010, the New Zealand Privacy Commissioner found that Google violated New Zealand privacy law when its Street View vehicles collected Wi-Fi data. The Privacy Commissioner said that Google "breached our privacy law when it collected the content of people's communications."

31. In January 2011, South Korean National Police determined that Google violated Korean privacy laws. The Korean Police made this finding after seizing computer hard drives

5

from Google's Seoul office and reviewing the hundreds of thousands of e-mails, passwords,

search histories, and other personal information Google had collected.

32.    In March 2011, France's National Commission for Computing and Civil Liberties

(CNIL) fined Google 100,000 Euros for violating French privacy rules when Google's Street

View cars collected peoples' e-mails and passwords without their knowledge. The Commission

cited the "established violations and their gravity, as well as the economic advantages Google

gained," as reasons for the highest fine it has ever levied.

## EPIC Submitted a FOIA Request to the FTC For Documents Regarding the Google Street View Inquiry

33.    On November 3, 2010, EPIC transmitted, via fax, a written FOIA request to the FTC

for Commission records ("EPIC's FOIA Request"). EPIC requested the following Commission

records:

1.    All records concerning the FTC's inquiry into Google Street View.

2.    All records concerning communications between the FTC Chairman and any former Google employees now working in the White House (including, but not limited to, Andrew McLaughlin), regarding the FTC's investigation of Google Cloud Computing services, Google Buzz, or Google Street View.

34.    EPIC also asked the FTC to expedite its response to EPIC's FOIA Request on the

bases that it pertains to a matter about which there is an urgency to inform the public about an actual

or alleged federal government activity, and was made by a person primarily engaged in

disseminating information. EPIC made this request pursuant to 5 U.S.C. § 552(a)(6)(E) (2010).

EPIC based the request on public and press interest in the privacy risks posed by Google Street

View, as well as the Commission's investigations of Google Street View, Google Cloud Computing

services, and Google Buzz.

35.    EPIC also requested "News Media" fee status under the Freedom of Information

Act, based on its status as a "representative of the news media."

36.    EPIC further requested waiver of all duplication fees.

37.    Disclosure of the records requested in EPIC's FOIA Request will contribute
significantly to public understanding of the operations and activities of the government.

### EPIC Appealed the FTC's Initial Failure to Disclose Any Documents

38.    On November 9, 2010, the FTC wrote to EPIC acknowledging receipt of EPIC's
FOIA Request, and granting EPIC's requests for expedited processing and a fee waiver.  EPIC
received this letter on November 15, 2010.

39.    The FTC did not make any substantive determination regarding EPIC's Request.

40.    The FTC did not produce any responsive documents.

41.    The FTC assigned EPIC's FOIA Request the case number FOIA-2011-00140.

42.    EPIC filed an administrative appeal on December 7, 2010, appealing the FTC's
failure to make a timely determination regarding EPIC's FOIA Request.

43.    On December 28, 2010, the FTC sent a letter to EPIC saying that the Commission
would not produce the requested documents by the statutory deadline.

### The FTC Improperly Withheld Documents Regarding Congressional Briefings

44.    On January 13, 2011, the FTC sent EPIC a partial response to EPIC's request ("First
FTC Response"), indicating that the FTC had located 260 pages of responsive records.

45.    The letter also stated that seventy-seven pages were withheld in full.

46.    The letter also stated that portions of other pages were withheld.

47.    The FTC invoked exemptions 5 U.S.C. § 552(b)(3); 5 U.S.C. § 552(b)(5); and 5
U.S.C. § (552)(b)(7)(A) to allegedly support the withholdings.

48.     In the First FTC Response, EPIC received several agency records that reference FTC briefings of Congressional members and staff about Google's collection of Wi-Fi data.

49.     In a series of e-mails dated from June 10, 2010 to June 11, 2010, a Hill briefing is mentioned. The e-mails detail location information and travel logistics.

50.     In another series of emails dated from October 29, 2010 to November 1, 2010, two other Hill briefings are mentioned several times.

51.     In these above referenced emails, FTC staff refer to a briefing for the House Committee on Oversight and Government Reform concerning Google's Wi-Fi data collection. They discuss preparing for the briefing, and the documents indicate an attachment titled, "Outline for Energy and Commerce Briefing," but the FTC failed to disclose the attached document.

52.     According to Sarah Corrigan, a FOIA Officer at the FTC, Hill briefing documents were located and withheld under Exemption b(5).

53.     On February 7, 2011, EPIC received another partial response from the FTC ("Second FTC Response"), consisting of 313 pages of records.  These records contained numerous redactions. The FTC invoked exemptions 5 U.S.C. § 552(b)(3); 5 U.S.C. § 552(b)(5); and 5 U.S.C. § (552)(b)(7)(A) to allegedly support the withholdings.

54.     In the Second FTC Response, the FTC indicated that some responsive records were withheld in full, but did not identify the documents.

55.     In the Second FTC Response, EPIC received several communications from the Commission regarding FTC briefings of Congressional members and staff about Google's Wi-Fi data collection.  In a series of emails dated from October 29, 2010 to November 1, 2010, several Hill briefings are mentioned, including one for the House Committee on Oversight and Government Reform as well as the minority staff on the House Energy and Commerce Committee.  Several of

8

these records refer to an "outline for wifi briefing." The FTC withheld this outline, an agency record, from EPIC.

56.     On March 8, 2011, EPIC received a third partial response from the FTC ("Third FTC Response"). The FTC identified 300 pages of responsive records, of which 40 were withheld in full. Portions of other records were also withheld. The FTC invoked exemptions 5 U.S.C. § 552(b)(3); 5 U.S.C. § 552(b)(4); 5 U.S.C. § 552(b)(5); and 5 U.S.C. § (552)(b)(7)(A) to allegedly support the withholdings.

57.     In the Third FTC Response, EPIC received several communications from the Commission regarding FTC briefings of Congressional members and staff concerning Google's Wi-Fi data collection. Several of these records refer to an "outline for Wi-Fi briefing." The FTC failed to disclose this outline to EPIC.

58.     The FTC has indicated that they have not yet provided the final production of documents.

### EPIC Filed Three Administrative Appeals with the FTC

59.     On February 11, 2011, EPIC filed an administrative appeal ("EPIC's First Appeal") challenging aspects of the First FTC Response.

60.     EPIC's First Appeal appealed, *inter alia*, the FTC's assertion of Exemption b(5) to withhold agency records shared with Congress and others outside the Commission.

61.     On March 11, 2011, EPIC received a letter from the FTC denying EPIC's First Appeal with regard to agency records shared with Congress and others outside the Commission.

62.     On March 7, 2011, EPIC filed an administrative appeal ("EPIC's Second Appeal"). concerning the Second FTC Response.

63.     EPIC's Second Appeal appealed, *inter alia*, the FTC's withholding of records in full,

including documents prepared for briefings to Congress and other outside the agency.  EPIC also
appealed the assertion of Exemption b(5) to redact portions of the requested records.

64.    On April 6, 2011, EPIC received a letter from the FTC denying EPIC's Second
Appeal with regard to agency records shared with Congress and others outside the Commission.

65.    On March 30, 2011, EPIC filed an administrative appeal ("EPIC's Third Appeal")
concerning the Third FTC Response.

66.    EPIC's Third Appeal appealed, *inter alia*, the FTC's assertion of Exemption b(5) to
withhold records in full and redact portions of other responsive records, including documents
prepared for briefings to Congress and others outside the Commission.

67.    On April 28, 2011, EPIC received a letter from the FTC denying EPIC's Third
Appeal with regard to agency records shared with Congress and others outside the Commission.

## Count I
## Violation of the FOIA: Wrongful Withholding of Agency Records

68.    Paragraphs 1-67 above are hereby incorporated by reference as if set forth fully
herein.

69.    EPIC has exhausted the applicable administrative remedies with respect to EPIC's
FOIA Request.

70.    The FTC has wrongly withheld responsive agency records regarding Commission
briefings to Congress and others outside the Commission to which EPIC is entitled under the
FOIA.

71.    EPIC is entitled to injunctive relief compelling the release and disclosure of the
requested agency records.

## Requested Relief

WHEREFORE, Plaintiff prays that this Court:

A.    order Defendant to produce all responsive agency records regarding Commission

       briefings to Congress and others outside the Commission within ten days of the

       Court's Order in this matter;

B.    award Plaintiff its costs and reasonable attorneys' fees incurred in this action

       pursuant to 5 U.S.C. § 552(a)(4)(E) (2010); and

C.    grant such other relief as the Court may deem just and proper.


                                    Respectfully submitted,


                         By:    _____
                                John Verdi, Esquire (DC Bar # 495764)
                                Marc Rotenberg, Esquire (DC Bar # 422825)
                                ELECTRONIC PRIVACY INFORMATION
                                CENTER
                                1718 Connecticut Avenue, N.W.
                                Suite 200
                                Washington, D.C. 20009
                                (202) 483-1140 (telephone)
                                (202) 483-1248 (facsimile)


Dated:  May 12, 2011